# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK W. SANDERS,<br><br>          Petitioner,<br><br>   v.<br><br>L. WATSON,<br><br>          Respondent. | 1:08-CV-01499 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Mark W. Sanders (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1993 conviction for kidnaping for robbery with the use of a deadly weapon. The trial court sentenced Petitioner to a prison term of seven years to life. Petitioner received an additional year pursuant to a sentence enhancement for the use of a deadly weapon.

Petitioner is not challenging his conviction in this instant action; rather, Petitioner challenges the decision by the California Board of Parole Hearings (the "Board"), whom he appeared before on February 28, 2007, to deny him parole. Petitioner contends that the Board's decision violated his constitutional rights.

In August 2007, Petitioner filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's decision. (*See* Resp't Answer Ex. 1.) The Superior Court issued a reasoned opinion denying the petition on February 28, 2008. (*See* Resp't Answer Ex. 2.)

1    Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal

2    and the California Supreme Court.  (Resp't Answer Exs. 3, 5.)  The California Court of Appeal and

3    California Supreme Court issued summary denials of the petitions.[1]  (*See* Resp't Answer Ex. 4, 6.)

4    On September 30, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.

5    Respondent filed a response to the petition on November 13, 2009, to which Petitioner filed a

6    traverse on December 14, 2009.

7    **FACTUAL BACKGROUND**

8    California regulations mandate that the Board consider the circumstances of the commitment

9    offense in determining parole suitability.  *See* Cal. Code Regs. tit. 15, § 2402(c)(1).  As the facts of

10   the commitment offense were considered by both the Board and the State court, they are relevant to

11   the Court's inquiry into whether the State court's decision upholding the Board's denial of parole

12   was objectively unreasonable.  The Board incorporated into the record a summary of the offense

13   taken from a December 2006 life prisoner evaluation report, stating:

14   > On September 2nd, 1992, the crime occurred.  The time and place of the crime are not
15   > noted in the probation officer's report.  Sanders did not know the victim.  The victim,
     > Raul Arce, was sitting in his 1983 Blazer when Sanders brandished a knife while his
16   > co-defendant brandished what appeared to be a gun.  They both got into the car and
     > threatened the victim with the weapons.  Sanders got behind the wheel and drove off
17   > and for the next hour the victim was threatened and demands were made for his
     > money.  When the car stopped, the victim was able to escape and immediately
18   > notified police officers.  Patrolling officers observed Sanders driving the victim's
     > vehicle and pulled in behind him.  Sanders and his co-defendant exited the vehicle
19   > and Sanders attempted to gain entry into a private residence before he was taken into
     > custody.  Police officers recovered a 45 caliber handgun from inside the car and a
20   > knife.  The victim positively identified Sanders as the suspect with the knife.

21   (Tr. Parole Hearing, at 13-14.)

22   The District Attorney's Office acknowledged that the handgun was actually a BB or toy gun.

23   (Id. at 20-21.)  Petitioner explained that he had approached the victim after he noticed the victim

     watching him as Petitioner attempted to break into another vehicle.  (Id. at 18-19.)

24   \\\

25   \\\

26

27   _____

28   [1]Respondent admits that Petitioner has exhausted his state court remedies and that the petition is timely.  (Answer at 2.)

**DISCUSSION**

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County.  (Pet. at 2.)  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    AEDPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes

1   'clearly established Federal law, as determined by the Supreme Court of the United States.'"

2   *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly

3   established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the

4   Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting

5   *Williams*, 592 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is

6   the governing legal principle or principles set forth by the Supreme Court at the time the state court

7   renders its decision."  *Id*.  Finally, this Court must consider whether the state court's decision was

8   "contrary to, or involved an unreasonable application of, clearly established Federal law."  *Lockyer*,

9   538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas

10  court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

11  Supreme] Court on a question of law or if the state court decides a case differently than [the] Court

12  has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538

13  U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if

14  the state court identifies the correct governing legal principle from [the] Court's decisions but

15  unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.

16  "[A] federal court may not issue the writ simply because the court concludes in its independent

17  judgment that the relevant state court decision applied clearly established federal law erroneously or

18  incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court

19  making the "unreasonable application" inquiry should ask whether the State court's application of

20  clearly established federal law was "objectively unreasonable." *Id*. at 409.

21       Petitioner bears the burden of establishing that the state court's decision is contrary to or

22  involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,

23  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

24  Circuit precedent remains relevant persuasive authority in determining whether a state court decision

25  is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the

26  Supreme Court's precedents are binding on the Arizona court, and only those precedents need be

27  reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200

28  F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer

1  reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on

2  a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a

3  habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining

4  whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and

5  also may help us determine what law is 'clearly established'").  Furthermore, the AEDPA requires

6  that the Court give considerable deference to state court decisions.  The state court's factual findings

7  are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

8  interpretation of its own laws.  *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

9        The initial step in applying AEDPA's standards is to "identify the state court decision that is

10  appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

11  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

12  reasoned decision.  *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

13  later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

14  ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

15  state court decisions to the last reasoned decision to determine whether that decision was contrary to

16  or an unreasonable application of clearly established federal law.  *Bailey v. Rae*, 339 F.3d 1107,

17  1112-1113 (9th Cir. 2003).  Here, the Los Angeles County Superior Court, the California Court of

18  Appeal, and the California Supreme Court reached the merits of Petitioner's claims.  As both the

19  California Court of Appeal and the California Supreme Court summarily denied Petitioner's claims,

20  the Court looks through those decisions to the last reasoned decision; namely, that of the Los

21  Angeles County Superior Court.  *See Nunnemaker*, 501 U.S. at 804.

22  **III.     Review of Petitioner's Claims**

23        The petition for writ of habeas corpus sets forth four grounds for relief, all alleging that

24  Petitioner's rights under the Due Process Clause were violated by the Board's denial of parole.  In

25  his first ground for relief, Petitioner contends that his right were violated by the Board's continual

26  reliance on immutable factors, namely his commitment offense and prior criminal misconduct.  The

27  second ground for relief argues that reliance on the commitment offense violated due process as the

28  circumstances of the commitment offense did not exceed the minimum elements necessary for a

1   conviction.  Petitioner's third ground for relief contends that Petitioner's due process rights have

2   been violated by the Board's reliance on the other factors as there is no evidence to support these

3   factors.  Lastly, Petitioner contends that the Board's failure to consider all relevant factors, namely

4   those in favor of parole suitability, violates his right to due process of the law.

5           **A.      *Grounds One, Two, and Three: Due Process and Some Evidence***

6           The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there

7   exist a liberty or property interest which has been interfered with by the State; the second examines

8   whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461

9   F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a

10  parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  Respondent argues that Petitioner does

11  not have a federally protected liberty interest in parole.  (Resp't Answer at 2.)  The Ninth Circuit

12  Court of Appeals has recognized that "[i]f there is any right to be release on parole, or to release in

13  the absence of some evidence of future dangerousness, it has to arise from substantive state law

14  creating a right to release."  *Hayward*, 603 F.3d at 555.  The Ninth Circuit further recognized that

15  "[t]here is no general federal constitutional 'some evidence' requirement for denial of parole, in the

16  absence of state law creating an enforceable right to parole."  *Id*. at 559.  The *Hayward* court's

17  finding, that there exists neither a free standing federal due process right to parole nor the federal

18  right to some evidence of current dangerousness, contained the consistent and continual caveat that

19  state law may in fact give rise to federal protection for those rights.  As the Ninth Circuit later

20  reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter of

21  federal law."  *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson v.*

22  *Austin*, 545 U.S. 209, 221 (2005)).   The *Pearson* court found that, "*Hayward* necessarily held that

23  compliance with state requirement is mandated by federal law, specifically the Due Process Clause"

24  as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of

25  federal law is long-established."  *Id.*

26  \\\

27  \\\

28  \\\

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id*. at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state"). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

### 1.    *State Court Decision*

Thus, the Court now turns to whether the Los Angeles County Superior Court's decision was an unreasonable application of the California some evidence standard. In that decision, the Superior Court upheld the Board's denial, finding that there was some evidence to support the Board's findings that the commitment offense demonstrated callous disregard for human suffering, that the motive for the commitment offense was very trivial in relation to the offense, and lastly that Petitioner has a previous record of violence. (Resp't Answer Ex. 2 at 1-2.) The Superior Court also noted that the Board had relied on additional factors, which alone might not justify a finding of unsuitability, including Petitioner's previous drug addiction, his prison disciplinary record, and his psychological evaluation which indicated that he was a moderately low risk of future violence. (Id. at 2.)

The Superior Court misapplied the California some evidence standard. As the Ninth Circuit recently observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

1   *Cooke*, 606 F.3d at 1214 (quoting *In re Lawrence*, 44 Cal. 4th 1181, 1210, 1213 (2008)); *see also*

2   Cal. Code Regs., tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an

3   unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable

4   and denied parole).  The California Supreme Court held in *Lawrence* that, "[t]he relevant

5   determination for the Board and the Governor is, and always has been, an individualized assessment

6   of the continuing danger and risk to public safety posed by the inmate." *In re Lawrence*, 44 Cal. 4th.

7   at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent

8   articulation of a rational nexus between those facts and current dangerousness, fails to provide the

9   required "modicum of evidence" of unsuitability").  In setting forth the standard for federal habeas

10  courts, the Ninth Circuit reiterated this principle, stating that "a reviewing court must consider

11  'whether the identified facts are *probative* to the central issue of *current* dangerousness when

12  considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214

13  (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221).

14          The Court finds the State court's decision to be an objectively unreasonable application of the

15  California some evidence standard as articulated by the California Supreme Court in *In re*

16  *Lawrence*.  The Los Angeles County Superior Court's analysis focused on whether there was some

17  evidence to support the individual factors relied on by the Board, rather than examining whether such

18  evidence supported a finding that Petitioner was currently dangerous.  The California Supreme Court

19  rejected this very test concluding "that current dangerousness (rather than the mere presence of a

20  statutory unsuitability factor) is the focus of the parole decision." *In re Lawrence*, 44 Cal.4th at

21  1210.  As the Superior Court examined the some evidence standard as it applied to the presence of

22  statutory unsuitability factors rather than considering whether the evidence was probative of current

23  dangerousness, the Court finds the Superior Court's decision to be an objectively unreasonable

24  application of California's some evidence standard.

25                    **2.      *Parole Board Decision***

26          The finding that the State court's decision was objectively unreasonable does not end a

27  federal habeas court's inquiry.  *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28

28  U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that state court's decision is

contrary to established federal law does not end that court's inquiry).  A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States.'" *Id.*  Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by a lack of evidence supporting the Board's denial of parole.  In its decision denying Petitioner parole, the Board relied on five factors: (1) the severity of the crime and its trivial motive; (2) Petitioner's pre-incarceration criminal record; (3) Petitioner's unstable social history; (4) Petitioner's post-incarceration disciplinary record; and (5) the psychological evaluation.

### a.      *Commitment Offense*

Petitioner contends that the Board's reliance on his commitment offense violates his right to due process of the law as the circumstances of his crime do not exceed the minimum elements necessary for a conviction.  Petitioner is not entitled to habeas corpus relief on this ground as the California Supreme Court has expressly rejected utilization of a minimum elements standard, stating:

> the minimum elements inquiry, which assesses only the gravity of the commitment offense, *fails to provide a workable standard for judicial review*, because it is now apparent that the aggravated nature of the commitment offense does not, in every case, provide some evidence that the inmate remains a current threat to public safety.

*In re Lawrence*, 44 Cal. 4th at 1218 (emphasis added).

Fourteen years had passed from the time in which Petitioner was convicted for the commitment offense to when he appeared before the Board in 2007.  The record does not contain any factors, such as a lack of remorse or insight in the crime, that would make the circumstances of the commitment offense probative of Petitioner's current dangerousness.  *Cf. In re Shaputis*, 44 Cal. 4th 1241, 1261 (2008) (holding that a habeas petitioner's lack of insight and failure to take responsibility made the circumstance so the commitment offense probative of current dangerousness).  The record reveals that Petitioner displayed a great deal of remorse for his actions, writing a letter of apology to the victim in which he stated:

> I am truly sorry for this crime I did to you.  I am sorry you've had to live with my actions since that day.  Your family and friends suffered by my actions and I am sorry. I can not turn back the hands of time.  I can only continue to express my remorse for my actions and I do that every day.

(Tr. Parole Hearing at 16-17.)

1    The Court notes that California regulations explicitly labels signs of remorse as a

2  circumstance tending to show suitability for parole.  *See* Cal. Code Regs. tit. 15, § 2402(d)(3).

3  Consequently, the Court finds no evidence of current dangerousness in Petitioner's commitment

4  offense.

5              **b.    Prior Record**

6          Pursuant to California regulations, a previous record of violence is a circumstance tending to

7  show parole unsuitability.  *See* Cal. Code Regs. tit. 15, § 2402(c)(2).  Here, the Board relied on

8  Petitioner's pre-incarceration criminal history to deny him parole.  (Tr. Parole Hearing at 98-101.)

9  The record reveals that Petitioner was either arrested or convicted of grand theft auto, possession of

10  narcotics, robbery, receiving stolen property, and burglary.  (Id. at 28-31.)  Petitioner was on

11  probation at the time of his commitment offense.  The Board's reliance on this immutable factor is

12  erroneous as the Board failed to articulate a rational nexus between why this immutable factor

13  continues to be probative of Petitioner's current dangerousness.  Just as  "mere recitation of the

14  circumstances of the commitment offense, absent articulation of a rational nexus between those facts

15  and current dangerousness, fails to provide the required 'modicum of evidence,'" mere recitation of

16  Petitioner's pre-incarceration record fails to provide the required modicum of evidence here.  *See In*

17  *re Lawrence*, 44 Cal. 4th at 1227.  Petitioner's last criminal offense was in 1991 for robbery.  In light

18  of the approximately sixteen years that have passed between this offense and Petitioner's parole

19  denial, the Court finds that no evidence of current dangerousness in Petitioner's pre-incarceration

20  criminal record.

21              **c.    Unstable Social History**

22          California regulations labels an unstable social history as a factor tending to show

23  unsuitability for parole, defining an unstable social history as "[t]he prisoner has a history of unstable

24  or tumultuous relationships with others."  Cal. Code Regs. tit. 15, § 2402(c)(3).  As noted by the

25  California courts, "an inmate's unstable social history, like his commitment offense, is an

26  'immutable' fact, and thus insufficient by itself to prove unsuitability."  *In re Shipman*, 110 Cal.

27  Rptr. 3d 326, 335 (Cal. Ct. App. 2010).  Here, the Court finds no evidence that Petitioner's unstable

28  social history is currently probative of Petitioner's dangerousness.  In its reliance on Petitioner's

1   unstable social history, the Board specifically stated:

2   > Unstable social history, obviously you said to us on a number of occasions, sir, that
3   > most of the stuff happening [sic] as a direct result of your brother's death.  You did
    > have that serious addiction to cocaine in terms of the substance abuse problem prior to
    > incarceration and of course, this history of criminality that was quite serious in that
4   > you even said to the Panel today that at the time of the commitment offense you had
    > been doing a lot of grand theft autos.  I mean you were obviously involved in a lot of
5   > burglaries in terms of cars but you just weren't getting caught.

6   (Tr. Parole Hearing at 101.)

7        The Board's discussion of Petitioner's unstable social history reveals that all the evidence

8   pertaining to this factor are no longer probative of current dangerousness.  The Board acknowledged

9   that Petitioner's addiction and his unstable social history stemmed from the death of Petitioner's

10  brother.  Considering the time that has passed since this event, it is unlikely to motivate Petitioner's

11  current actions.  Additionally, the evidence indicates that Petitioner does not have "unstable or

12  tumultuous relationships with others."  *See In re Rico*, 171 Cal. App. 4th 659, 679 (2009).  Akin to

13  the habeas petition in *Rico*, numerous family members and friends sent in letters of support and

14  offers of residency and employment, evidencing Petitioner's stable relationship with people outside

15  of prison.  (Tr. Parole Hearing at 56-71.)  Thus the Court finds that Petitioner's unstable social

16  history does not currently support a finding that he is dangerous.

17                    ***d.       Disciplinary Record/Psychological Evaluation***

18       Institutional behavior, defined as "[t]he prisoner has engaged in serious misconduct in prison

19  or jail," is a circumstance tending to show parole unsuitability.  Cal. Code Regs. tit. 15, § 2402(c)(6).

20   In the decision denying Petitioner parole, the Board noted:

21  > The prisoner has programmed while incarcerated...This conduct while incarcerated
    > includes 19 128A counseling chronos.  The most recent of which is January 25th of
22  > 2003, in which the prisoner was described as being non-receptive to counseling.  He
    > has however been free of those for approximately four years.  Serious 115 disciplinary
23  > reports, there were four.  The most recent was July 24th 2001 out of a recurring failure
    > to report, 2000 disrespecting staff, 1998 alcohol and '95 fighting.  He has been free of
24  > 115's for six years.

25  (Tr. Parole Hearing at 101-102.)

26       The Court notes that the language of California's regulations expressly lists "serious

27  misconduct," not minor misconduct, as a factor supporting unsuitability.  A CDC 128 documents

28  incidents of minor misconduct.  *See* Cal. Code Regs. tit. 15, § 3312(a)(2); *In re Gray*, 151 Cal. App.

4th 379, 389 (2007).  While the list of factors enumerated in the California regulations are not exclusive, the Court questions the probative value of a minor disciplinary infraction from four years prior to the parole hearing toward Petitioner's current dangerousness.

However, the Court does find Petitioner's disciplinary infractions when combined with the psychological report evidences current dangerousness.  One of Petitioner's serious disciplinary infractions was for possession of alcohol.  The psychological evaluation noted that Petitioner understood the life crime and appeared to have good insight into his past criminality.  (Tr. Parole Hearing at 49, 51, 53).  The psychological evaluation found that the overall risk assessment "suggest that the inmate poses a moderately low likelihood to become involved in a violent offense if released into the free community....there is the caveat that such an assessment is at least partially based on the likelihood of continued abstinence from any substance abuse."  (Pet. Ex. B at 8).  The psychologist found that in terms of Petitioner's management of future risk that "there are possible destabilizing factors that increase his violence risk," and specifically pointed to Petitioner's diagnosis of polysubstance dependence.  (Id. at 7.)  The evaluator opined that "there would be a moderate to low risk that the inmate will resume substance use upon release."  (Id. at 8.)  In light of the psychological evaluation, Petitioner's disciplinary infraction for possession of alcohol is probative of current dangerousness, especially as Petitioner was already a participant in Alcoholics Anonymous at the time of his infraction.

Arguably, the probative value of this disciplinary infraction is stymied by the length of time in between the infraction (1998) and the parole hearing (2007).  In *Cooke*, the Ninth Circuit found that two minor non-violent disciplinary infractions which occurred nearly a decade prior to the parole hearing could not reasonably be viewed as evidence that the habeas petitioner was a current risk to public safety.  *Cooke*, 606 F.3d at 1215.  However, unlike in *Cooke*, where the inmate was discipline free in the decade following the disciplinary infraction, Petitioner incurred two serious, though non-violent, disciplinary infractions and at least one minor disciplinary infraction during this time period.  Thus, the Court finds that Petitioner's inability to remain discipline free for a lengthy period of time and the psychological evaluation's assessment constitutes a modicum of evidence showing Petitioner is currently dangerous.  Consequently, Petitioner's constitutional rights have not been violated as the

1  record contains "more than the crime or its circumstances alone to justify the Board's or the

2  Governor's finding of current dangerousness." *Cooke*, 606 F.3d at 1214.  Petitioner is not entitled

3  to relief on this ground.

4  **B.    *Ground Four: Failure to Consider All Relevant Evidence***

5  California regulations mandates that the Board consider "all relevant, reliable information

6  available to the panel." Cal. Code Regs. tit. 15, § 2402(b).  Petitioner claims that the Board failed to

7  consider all relevant factors, especially those supporting a grant of parole.  Petitioner's fourth claim

8  does not entitle him to habeas corpus relief as it is plainly contradicted by the record.  The Board

9  considered several factors tending to support a grant of parole, including Petitioner's extremely

10  impressive parole plans.  (Tr. Parole Haring at 102-103.)  During the decision part of the hearing, the

11  Board commended Petitioner for his educational achievements, participating in self-help, gaining

12  marketable skills, his recent disciplinary record, and his laudatory chronos and memoranda from

13  Petitioner's supervisors.  (Id.)  The record of the hearing itself reinforces the fact that the Board

14  considered the factors supporting a grant of parole as the Board examined Petitioner's educational

15  gains (Id. at 35), his recent lack of disciplinary issues (Id. at 38), his vocation upgrades (Id. at 39), his

16  exceptional work reports (Id. at 40), the laudatory chronos pertaining to his involvement in self-help

17  (Id.),  Petitioner's involvement in Alcoholics Anonymous, and his parole plans and letters of support

18  (Id. at 56-71).  Thus, Petitioner's claim that the Board did not consider these positive factors is

19  without evidentiary support and cannot be a basis for habeas corpus relief.

20  **RECOMMENDATION**

21  Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

22  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

23  Respondent.

24  This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

25  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of

26  the Local Rules of Practice for the United States District Court, Eastern District of California.

27  Within thirty (30) days after being served with a copy, any party may file written objections with the

28  court and serve a copy on all parties.  Such a document should be captioned "Objections to

1   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

2   filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

3   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

4   parties are advised that failure to file objections within the specified time may waive the right to

5   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6

7   IT IS SO ORDERED.

8   **Dated:     July 15, 2010                            /s/ John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28